**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANDRE TITUS BROOKS,

       *Plaintiff*,

  v.

DISTRICT OF COLUMBIA OFFICE OF
THE STATE SUPERINTENDENT OF
EDUCATION,

       *Defendant*.

Case No. 24-cv-1049 (JMC)

**MEMORANDUM OPINION AND ORDER**

Andre Titus Brooks worked as a school bus driver for the District of Columbia. In early 2021, he contracted COVID. That began several years of issues with the District related to his requests to telework, his use of various forms of leave, and his attendance—or lack thereof. Eventually, he was removed from his position. He sued the District's Office of the State Superintendent of Education, alleging that his treatment after he contracted COVID violated the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964, and—as the Court understands his complaint—the Family and Medical Leave Act (FMLA) along with its D.C. analog, the D.C. Family and Medical Leave Act (DCFMLA).[1] The Court concludes that most of

---

[1] The Office correctly notes that it "is non sui juris and therefore not subject to suit here." *A.D. v. Creative Minds Int'l Pub. Charter Sch.*, No. 18-cv-2430, 2020 WL 12654618, at *23 (D.D.C. Aug. 14, 2020), *R&R adopted*, 2020 WL 6373329 (D.D.C. Sept. 28, 2020). "When a plaintiff erroneously names as a defendant a District of Columbia agency instead of the District of Columbia itself, a court may substitute the District as a defendant for its agency." *Sampson v. D.C. Dep't of Corr.*, 20 F. Supp. 3d 282, 285 (D.D.C. 2014). Because one of Brooks' claims is plausible, the Office is wrong to say that substitution would be futile. The Court therefore substitutes in the District as the defendant.

1

Brooks' claims are not plausible and therefore must be dismissed under Rule 12(b)(6). Brooks has, however, pled a plausible claim for interference with his rights under the FMLA and DCFMLA.[2]

## I.      BACKGROUND

The Court recounts the facts as alleged in Brooks' complaint and, because he is pro se, his "filings responsive to [the] motion to dismiss." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024). Brooks worked as a school bus driver in the District of Columbia. *See* ECF 8-1 at 44 (Brooks says he was hired in 2016). In early 2021, he contracted COVID-19. *See* ECF 1-2 at 2. Unfortunately, that was the beginning of a long saga that led to the end of his employment. About a month after his diagnosis, Brooks submitted an ADA accommodation request, with medical documentation, asking for "mandatory telework" due to his "high-risk health conditions." ECF 8-1 at 44. About three months later, the District denied that request. *See id.* at 36, 44.

On the same day that Brooks says the District denied his leave request, the District also responded to a "Family and Medical Leave Application Form" that it says Brooks submitted a few months earlier. ECF 8-1 at 9 (response dated June 25, 2021); *id.* at 44 (Brooks says "telework request was denied" same day); *id.* at 10–12 (leave application dated March 10, 2021). Brooks acknowledges the leave form "was completed and signed" but says he did not do either of those things. ECF 8 at 1. He therefore "questions the validity of the document." *Id.* In its email responding to the leave form, the District "retroactively approved" Brooks to use "COVID Sick Leave" as well as additional hours of medical leave and DCFMLA leave. ECF 8-1 at 9. The District also notified Brooks that his medical leave had ended nearly three weeks before this email was

---

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

2

sent—because the "medical note" had only requested time off up until that point—so his absences from that point forward were "unauthorized." *Id.*

In January 2022, Brooks requested FMLA leave (this time he agrees he made the request). *See* ECF 6-2 at 1.[3] Brooks was suffering lingering effects from COVID-19. *See* ECF 1-2 at 2. The District denied that request on the ground that Brooks had not worked the requisite number of hours in the prior year to be eligible for either FMLA or DCFMLA leave. *See id.*; ECF 6-2 at 1. According to the District's records—which Brooks attached to his opposition—Brooks went on to accumulate "over 300 unauthorized absences." ECF 8-1 at 33. Those absences began in February 2022, shortly after he requested FMLA leave. *See id.* at 34. The District attempted to "contact[]" Brooks "about his failure to report to work" but he "failed to respond." *Id.* Eventually, in late 2023, the District "issued a notice to remove" Brooks. *Id.* at 33. On January 29, 2024, Brooks was removed from his position. *See* ECF 1-2 at 2; ECF 8-1 at 35.

Brooks then filed a charge of discrimination with the Equal Employment Opportunity Commission on February 15, 2024, alleging discrimination and retaliation in violation of the ADA and Title VII. *See* ECF 8-1 at 45. The Commission issued Brooks a right to sue letter the same day. *See* ECF 6-5. Brooks then filed this lawsuit in the Superior Court of the District of Columbia. *See* ECF 1 at 1. In a sparse complaint, he discusses his "contract[ion]" of COVID-19 in 2021, his request for an "ADA accommodation" of "mandatory telework" that year, and his removal in 2024 because of the missed days at work. *See* ECF 1-2 at 2–3. He also alleges that all of his "leave was exhausted due to error[s]," and links that to his termination. *See id.* at 3. He requested

---

[3] The District attached the letter responding to that request to its motion to dismiss, *see* ECF 6-2 at 1, but because Brooks' filings reference that letter it is incorporated into the complaint and can be considered alongside Brooks' filings. *See* ECF 8-1 at 44 (referencing April 26, 2022, denial of FMLA request); *Lewis v. Mutond*, 62 F.4th 587, 590 n.1 (D.C. Cir. 2023).

reinstatement, back pay, and "pain and suffering damages." *Id.* at 2. The District removed the case to this Court and then filed a motion to dismiss for failure to state a claim. *See* ECF 1; ECF 6.[4]

## II.    LEGAL STANDARD

"To survive" a Rule 12(b)(6) "motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must treat the complaint's factual allegations as true . . . and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). That said, a court need not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Nor must a court accept "legal conclusions cast in the form of factual allegations." *Id.*

## III.    ANALYSIS

Construing Brooks' complaint "leniently" and with the aim of "determin[ing]" whether "any legally cognizable claim can be found," the Court understands Brooks to be pressing claims under the ADA, Title VII, and FMLA (along with its state law counterpart). *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024); *see* ECF 1-2 at 2–3; ECF 6 at 3–4 (District identifying same theories).[5] Brooks has not plausibly pled any claims under either of the first two of those statutes but has plausibly pled a claim under the FMLA and its D.C. analogue.

---

[4] The District also moved for summary judgment in the alternative. *See* ECF 6 at 1. The Court "declines . . . to entertain" that request "before allowing for a period for discovery." *Williams v. Donovan*, 219 F. Supp. 3d 167, 182 (D.D.C. 2016). Summary judgment is generally "premature unless all parties have had a full opportunity to conduct discovery." *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012). Accordingly, the Court does not consider materials that the District submitted outside of what the Court can properly consider upon a motion to dismiss.

[5] Brooks also alludes to workers' compensation in his complaint and the exhibits attached to his opposition. *See* ECF 1-2 at 3; ECF 8-1 at 30–32. The Court does not understand Brooks to be making a workers' compensation claim in this case and, apparently, the District does not read his complaint that way either. This Court is not the right forum for such a claim in any event. *See McManus v. District of Columbia*, 530 F. Supp. 2d 46, 77–78 (D.D.C. 2007) (explaining that "District employees must pursue . . . workers' compensation claims before [the Department of Employment Services] and then in the District of Columbia Court of Appeals").

4

**A. The ADA**

Brooks seems to be making two claims under the ADA. First, that the District failed to provide him with a reasonable accommodation when he requested it in 2021, and second, that the District at some point retaliated against him for requesting an accommodation. *See* ECF 1-2 at 2.

The first claim fails because it is untimely. "While the ADA does not explicitly contain its own statute of limitations, it is well-settled that the procedures of Title VII," and in particular the "limitations period set forth in 42 U.S.C. § 2000e-5," are "applicable to" employment discrimination "actions brought under the ADA." *Stewart v. District of Columbia*, No. 04-cv-1444, 2006 WL 626921, at *3 (D.D.C. Mar. 12, 2006); *see* 42 U.S.C. § 12117(a) (Title I of ADA adopting "procedures" from § 2000e-5). Under that limitations provision, "an administrative complaint . . . must be filed with the" Equal Employment Opportunity Commission (EEOC) "within 180 days of the alleged unfair employment practice, unless the complainant has first instituted proceedings with a state or local agency, in which case the limitations period is extended to a maximum of 300 days." *Stewart*, 2006 WL 626921, at *3. Because under D.C. law a "timely filed EEOC charge is cross-filed" with the relevant local agency, Brooks had 300 days to file his charge. *Tucker v. Howard Univ. Hosp.*, 764 F. Supp. 2d 1, 6 (D.D.C. 2011). But Brooks' accommodation request was denied in 2021, *see* ECF 1-2 at 2, and he did not file his EEOC charge until 2024, *see* ECF 8-1 at 45. This claim was therefore not exhausted within the limitations period.

To the extent Brooks alleges his termination was retaliation, that claim was timely exhausted. *See* ECF 1-2 at 2 (removed on January 29, 2024). Brooks engaged in protected activity early in 2021 when he requested an accommodation, but he was not issued the notice of proposed removal until the end of 2023. *See* ECF 8-1 at 33. That gap in time is far too long to suggest Brooks was removed because he requested an accommodation. *See Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) ("[T]emporal proximity can indeed support an inference of causation, but

only where the two events are very close in time."). Because no other allegations in the complaint or materials Brooks filed on the docket support the inference that he was removed because he engaged in protected activity, this claim fails, too.

## B. Title VII

Brooks has likewise failed to state a claim under Title VII. Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Apart from a fleeting reference in his EEOC charge and surreply to a request for a possible "religious exemption," *see* ECF 8-1 at 44; ECF 15 at 6, Brooks has not set forth any allegations suggesting discrimination or retaliation due to any of those characteristics. While Brooks did not need to plead "detailed factual allegations," his "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient to state a claim under Title VII. *Ashcroft*, 556 U.S. at 678.

## C. The FMLA and DCFMLA

Under "certain circumstances, the FMLA and its DC counterpart, the DCFMLA, grant an employee the right to take temporary medical leave from employment[]." *Dorsey v. Jacobson Holman, PLLC*, 756 F. Supp. 2d 30, 33 (D.D.C. 2010). It is unclear if Brooks is bringing a claim under only the FMLA, or also the DCFMLA, but "the same legal framework" applies to both. *Thomas v. District of Columbia*, 227 F. Supp. 3d 88, 98 (D.D.C. 2016). The two laws prohibit an employer from interfering with an employee's right to take leave, and from retaliating against an employee for exercising her rights under the statutes. *See id.* at 99, 110.

Although Brooks has not articulated the theory with precision, he has pled facts that at this stage make out a plausible interference claim. According to Brooks, "all" of his "leave was exhausted due to error." ECF 1-2 at 3. And in its June 2021 letter responding to Brooks' request for "COVID Sick Leave," the District did notify Brooks that it was "requir[ing]" him to use "DCFMLA" leave. ECF 8-1 at 17. To that end, the District "counted" 105 hours of FMLA and

DCFMLA leave against Brooks' "entitlement," while granting him 70 hours of "COVID Sick Leave." *Id.* The forms, however, suggest Brooks might have been entitled to "up to 12 weeks" of "COVID Sick Leave"—seemingly more than the 70 hours he was granted. *Id.* at 14. At this stage, it is plausible to infer that the District "forc[ed]" Brooks to use FMLA leave in 2021, rather than another form of leave—COVID Sick Leave—to which he was entitled. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1244 (9th Cir. 2014). By doing so, the District may have exhausted Brooks' allotment of FMLA leave such that the leave was "not available" when he "later" applied for it in 2022. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007); ECF 8-1 at 44. If Brooks proves that sequence, he could prevail on his "interference claim." *Wysong*, 503 F.3d at 449; *see also Skrynnikov v. Fed. Nat'l Mortg. Ass'n*, 226 F. Supp. 3d 26, 38 (D.D.C. 2017) (endorsing this theory of FMLA interference claim); *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 165 (D.C Cir. 2015) (holding that the FMLA prohibits "conduct that *reasonably tends* to interfere with the exercise of FMLA rights").

To be sure, this theory might be disproved in discovery. For one, the District may not have made an error in designating Brooks' missed time in 2021 as FMLA and DCFMLA leave. For another, as the District rightly points out, *see* ECF 6 at 16, Brooks will need to prove that he had worked a sufficient number of hours during the previous 12 months to qualify for DCFMLA or FMLA leave when he applied for it in early 2022. *See* 29 U.S.C. § 2611(2)(A)(ii) (requiring "1,250 hours of service"); D.C. Code § 32-501(1)(A)(ii) (requiring "1,000 hours"). But at this early stage, it is plausible to infer that Brooks met the requirements of at least one of the statutes. In June 2021, the District's "records" suggested Brooks worked at least "1666.50 hours" in the prior 12 months. ECF 8-1 at 13–14. And Brooks' exhibits suggest he was working between June 2021 and February 2022. *See* ECF 8-1 at 9 (indicating last day of Brooks' 2021 leave); ECF 6-3 (District record

suggests Brooks was reporting to work until February 2022). Given that Brooks worked more than 1,600 hours in the 12 months preceding June 2021 despite his lengthy absence during that period, it is not implausible to think Brooks could have worked at least 1,000 hours—as the DCFMLA requires—in the 12 months before he requested leave in 2022.

While Brooks has pled a plausible claim of interference under the FMLA, he has not pled a plausible retaliation claim. Insofar as Brooks alleges the 2022 denial of his FMLA leave request was retaliatory, generally the "denial of a request for FMLA leave does not constitute an adverse employment action for the purposes of FMLA retaliation." *Connor v. Prof. Med. Billing, Inc.*, 607 F. Supp. 3d 838, 848 (N.D. Ind. 2022). That is because the "denial" of an FMLA request is properly understood as an "interference claim." *Id.*; *see also Murray v. City of New York*, No. 23-cv-10031, 2024 WL 3553266, at *14 (S.D.N.Y. Jul. 26, 2024) (adopting same reasoning). And Brooks' termination in 2024 is far too temporally removed from his 2022 FMLA request to support an inference of causation. *See Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 319 (D.D.C. 2015) (suggesting that three months is the "outer limit" of the temporal proximity requirement for FMLA retaliation claims).

*   *   *

The District's motion to dismiss, ECF 6, is **GRANTED in part** and **DENIED in part**.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 16, 2026